UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK COLSTON and
TAMMIE JANIS,

        Plaintiffs,                    CIVIL ACTION NO. 15-cv-14314

        v.                        DISTRICT JUDGE TERRENCE G. BERG

ROBERT LIEBECK, STEVE          MAGISTRATE JUDGE MONA K. MAJZOUB
LIEBECK, and CHELSEA
HOMETOWN SERVICES,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

On December 11, 2015, Plaintiffs Mark Colston and Tammie Janis filed substantially similar *pro se* complaints against Defendants Robert Liebeck, Steve Liebeck, and Chelsea Hometown Services, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.[1]  (Docket no. 1; *Janis v. Liebeck*, No. 15-cv-14315, docket no. 1.)  Before the Court are Plaintiffs' Motions for Default Judgment.   (Docket nos. 80, 85, 86, 90, 91, and 92.) This action has been referred to the undersigned for all pretrial proceedings.  (Docket no. 13.) The undersigned has reviewed the pleadings, dispenses with oral argument on the motions pursuant to Eastern District of Michigan Local Rule 7.1(f), and issues this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

---

[1] Plaintiffs' complaints were filed as separate actions in this court, which were subsequently consolidated under the instant civil action number pursuant to Federal Rule of Civil Procedure 42(a) on February 10, 2016.  (Docket no. 11; *Janis v. Liebeck*, No. 15-cv-14315, docket no. 14.)

## I.     RECOMMENDATION

For the reasons that follow, it is recommended that Plaintiffs' Motions for Default Judgment (docket nos. 80, 85, and 86) be **DENIED** as moot.  It is further recommended that Plaintiffs' Motions for Default Judgment (docket nos. 90, 91, and 92) be **GRANTED IN PART** and **DENIED IN PART** through the entry of a default judgment against Defendants in the amount of $40,000.

## II.     REPORT

### A.     Facts and Procedural History

The facts of this matter are gleaned from Plaintiffs' Complaints.  (Docket no. 1; *Janis v. Liebeck*, No. 15-cv-14315, docket no. 1.)  On or about October 4, 2015, Plaintiff Colston was contacted by a subcontractor, Anita Williams, regarding a painting job.  She advised Plaintiff Colston that she had been contacted by Defendant Steve Liebeck, who was seeking painters on behalf of Defendant Chelsea Hometown Services to paint apartments at a rate of $50.00 per room.  Plaintiff Colston purportedly accepted the job, and Ms. Williams told him to be to work at 10:00 a.m. the next day and that Steve Liebeck would be expecting him.  Plaintiff Colston brought his work partner, Plaintiff Janis, with him to the job site the next day, and together they met with Steve Liebeck regarding the job.  Steve told them that he was contracted to paint at least 50 or 60 apartments a month, and if they liked the job, he would hire them to paint the apartments at the rate of $50.00 per room.  He then instructed Plaintiffs to follow him to an apartment so that they could paint it and see if they liked the job.  The apartment contained four rooms – a kitchen, bathroom, living room, and one bedroom.  Plaintiffs painted the apartment within three hours and forty minutes, and contacted Steve when they were finished.  Steve then inspected Plaintiffs' work and told them that they had done a good job.  He told Plaintiffs that

they were hired for the job and instructed them to keep the paint and bring it with them to work the next day at 10:00 a.m.  He also instructed them to pick up their money for the day's work from his father, Defendant Robert Liebeck.

Plaintiffs then went to Defendant Chelsea Hometown Services' headquarters to meet with Defendant Robert Liebeck.  Upon arriving, Plaintiff Janis asked Robert to use the restroom; he granted her permission and told her where the restroom was located.  While she was in the restroom, Robert paid Plaintiff Colston $50.00 for painting the apartment.  Colston questioned the payment amount, telling Robert that Steve had promised them a rate of $50.00 per room. Robert told Colston that Steve had intentionally misled them because he wanted them to paint the apartment for only $50.00.  Colston told Robert that he would need to split the money with Janis, which meant that he would be paid only $25.00.  He then told Robert that he wanted the $50.00 per room that they had agreed to pay him.  Robert told Colston that he was not going to pay him, and he instructed Colston to not bring a white woman with him next time because it didn't look right out in Wixom.  Colston told Robert that his statement was racist and that he could not refuse to pay him just because he worked with a white woman.  Robert again told Colston that he was not going to pay him, and he said that if Colston did not leave the office he was going to regret it.  Colston then left the office.  Janis subsequently exited the restroom, upon which Robert said to her, "honey, do not come back with that nigger;" he also told her that if she came back by herself she would make a lot more money.

Later that evening, Plaintiff Colston contacted Defendant Steve Liebeck regarding the $50.00 payment that Defendant Robert Liebeck had paid Plaintiffs for painting the entire apartment.  Steve told Colston that he was not going to pay him any more money and that he should learn his lesson about hanging around with and dating a white woman.  Colston told

3

Steve that his statement was racist and said that his working with a white woman had nothing to do with the pay. Steve told Colston that "if you are rich you can be racist;" that he was not going to pay Colston any more money; and that "if he was a good nigger, he would let this issue go." In their Complaints, Plaintiffs seek a combined total of $12,000,000.00 in compensatory and punitive damages, and they ask that Defendants be required to pay for any mental health counseling that they may need as a result of Defendants' actions. (Docket no. 1 at 4; *Janis v. Liebeck*, No. 15-cv-14315, docket no. 1 at 3.)

After multiple failed attempts at service of the Complaints upon Defendants, Defendants were served via certified mail on January 17, 2017. (Docket no. 66 at 2-3; docket no. 81 at 3-4; docket no. 82 at 3-4.) Defendants failed to plead or otherwise defend within the time allotted under Federal Rule of Civil Procedure 12, so Plaintiffs requested and received a Clerk's Entry of Default against Defendant Chelsea Hometown Services on February 17, 2017 (docket nos. 66, 67) and Defendants Robert and Steve Liebeck on March 8, 2017 (docket nos. 81, 82, 83, 84). After the defaults were entered, Plaintiffs filed Motions for Default Judgment against Defendant Chelsea Hometown Services on March 7, 2017 (docket no. 80) and against Defendants Robert and Steve Liebeck on March 10, 2017 (docket nos. 85, 86). Plaintiffs subsequently filed another set of Motions for Default Judgment against Defendants on March 20, 2017. (Docket nos. 90, 91, 92.) These six motions are pending before the court.

**B.    Standard**

Federal Rule of Civil Procedure 55(b)(2) provides that in entering a default judgment, the "court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D)

investigate any other matter." Fed. R. Civ. P. 55(b)(2). Pursuant to Rule 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

###### C. Analysis

As an initial matter, the Court reiterates that Plaintiffs have filed two Motions for Default Judgment against each of the defendants in this matter, for a total of six motions. All of the motions consist of the two-page forms provided by the Clerk's Office for requests for a Clerk's Entry of Default Judgment, which Plaintiffs have completed and converted into Motions for Default Judgment. The three later-filed motions, however, also contain a two-page affidavit written by Plaintiff Janis, which provides additional information regarding the amount of damages sought by Plaintiffs. (Docket nos. 90, 91, 92.) These amended motions supersede the original motions, and it is therefore recommended that the original motions (docket nos. 80, 85, 86) be denied as moot.

Next, the Court deems it necessary to acknowledge the fact that Plaintiffs' Motions contain several minor procedural defects under the Federal Rules of Civil Procedure and Local Rules of this District. Most notably, only Plaintiff Janis has signed the Motions for Default Judgment, which is a violation of Federal Rule of Civil Procedure 11(a).[2] Nevertheless, in recognition of its responsibility to liberally construe the pleadings of *pro se* plaintiffs and hold them to a less stringent standard than similar pleadings drafted by attorneys, *see Haines v. Kerner,* 404 U.S. 519, 520-21 (1972); *Hahn v. Star Bank,* 190 F.3d 708, 715 (6th Cir. 1999), the Court overlooks these procedural defects in favor of proceeding on the merits of Plaintiffs' amended Motions.

---

[2] Plaintiff Colston's verbal contact with the Court regarding the status of the instant motions indicates that he is indeed a co-movant for default judgment.

"When a defendant is in default, the well pleaded factual allegations in the Complaint, except those relating to damages, are taken as true." *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 848 (E.D. Mich. 2006) (citing *Thomson v. Wooster,* 114 U.S. 104 (1885); *Antoine v. Atlas Turner, Inc.,* 66 F.3d 105, 110–11 (6th Cir. 1995)). If those allegations are sufficient to support a finding of liability on the plaintiff's federal claims, then the court should enter the default judgment. *Id*. But "even if [a defendant] is bound on the issue of liability, it still has the opportunity to respond to the issue of damages." *Antoine*, 66 F.3d at 111. As of the date of this Report, none of the defendants has appeared in this matter with regard to the issue of liability or the issue of damages.

### 1.   *Liability*

Plaintiffs bring their claim under Title VII of the Civil Rights Act of 1964, which the Court construes as a claim of racial discrimination/hostile work environment resulting in constructive discharge. Title VII provides that it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. "A plaintiff may establish a claim of discrimination either by introducing direct evidence of discrimination or by proving inferential and circumstantial evidence that would support an inference of discrimination." *Weeks v. Michigan, Dep't of Cmty. Health*, 587 F. App'x 850, 855 (6th Cir. 2014). "Direct evidence is evidence that requires the conclusion, without any inference, that unlawful discrimination was at least a motivating factor in an employer's actions." *Douglas v. Eaton Corp.*, 577 F. App'x 520, 523 n.1 (6th Cir. 2014) (citing *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003)). "Any discriminatory statements must come from decisionmakers to constitute [direct] evidence of

discrimination." *Flones v. Beaumont Health System*, 567 F. App'x 399, 404 (6th Cir. 2014) (citations omitted).

Where direct evidence of discrimination does not exist, the claim is analyzed using the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012). To prevail under this framework, a plaintiff must present a prima facie case of unlawful discrimination, at which point the defendant must come forward with a legitimate, non-discriminatory reason for its action. *Johnson*, 319 F.3d at 866. "To establish a prima facie case of a racially hostile work environment, a plaintiff must demonstrate that (1) she was a member of a protected class; (2) she was subjected to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) the employer is liable." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir. 2009) (citing *Hafford v. Seidner,* 183 F.3d 506, 512 (6th Cir. 1999)). "[T]o establish 'constructive discharge,' the plaintiff must make a further showing: She must show that the abusive working environment became so intolerable that her resignation qualified as a fitting response." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 134 (2004).

With regard to the first element of a prima facie case of a racially hostile work environment, "[t]he Sixth Circuit has held that in order to state a cognizable claim under Title VII, the plaintiff himself need not be a member of a recognized protected class; he need only allege that he was discriminated against on the basis of his association with a member of a recognized protected class." *Brown v. Gojcaj Foods, Inc.*, No. 09-14537, 2011 WL 6370987, at *6 (E.D. Mich. Dec. 20, 2011) (citing *Johnson v. University of Cincinnati,* 215 F.3d 561, 574 (6th Cir. 2000), *cert. denied* 121 S.Ct. 657 (2000)). And with regard to the fourth element,

courts have held that "[m]ere offensive utterances are not sufficient to create an actionable hostile environment." *Chancellor v. Coca-Cola Enterprises, Inc.*, 675 F. Supp. 2d 771, 779–80 (S.D. Ohio 2009) (citing *Clay v. United Parcel Service, Inc.,* 501 F.3d 695, 708 (6th Cir. 2007)). "However, the use of the word 'nigger,' even taken in isolation, is not a 'mere offensive utterance.'" *Id.* (citing *Johnson v. United Parcel Service, Inc.,* 117 F. App'x 444, 454 (6th Cir. 2004)).

Here, Plaintiffs indicate in their Complaints that Plaintiff Janis is a white female. And, while not explicitly stated, all reasonable inferences in the Complaints indicate that Plaintiff Colston is an African-American male. Plaintiffs allege that Defendant Robert Liebeck told Colston that he would not pay him the agreed-upon rate of $50.00 per room and that he should not bring a white woman with him to work because it didn't look right out in Wixom. Colston allegedly responded that Robert could not refuse to pay him just because he worked with a white woman, to which Robert replied by reiterating that he was not going to pay Colston. Plaintiffs also allege that Robert told Plaintiff Janis, "honey, do not come back with that nigger" and that if she came back to work by herself, she would make a lot more money. Plaintiffs further allege that Defendant Steve Liebeck told Colston that he was not going to pay him any more money and that he should learn his lesson about hanging around with and dating a white woman. And when Colston challenged Steve's comments as racist and said that his working with a white woman had nothing to do with the pay, Steve allegedly told Colston that "if you are rich you can be racist," that he was not going to pay Colston any more money, and that "if he was a good nigger, he would let this issue go." Additionally, in her affidavit submitted in support of the instant Motions for Default Judgment, Plaintiff Janis alleges that Robert called her a "nigger lover." (Docket no. 92 at 3.) After drawing all reasonable inferences in Plaintiffs' favor, and

accepting their allegations as true, the undersigned concludes that Plaintiffs have pleaded and presented sufficient evidence to establish a hostile work environment/constructive discharge discrimination claim and that Defendants are liable for damages arising from that claim.

Plaintiffs also seemingly purport to state a claim against Defendants under the Equal Protection Clause of the Fourteenth Amendment.  But "the Equal Protection Clause prohibits only discrimination by the State, not by a private actor." *Black v. Barberton Citizens Hosp.*, 134 F.3d 1265, 1267 (6th Cir. 1998).  It is indisputable that the defendants in this matter are private actors.  Accordingly, Defendants cannot be liable to Plaintiffs under the Equal Protection Clause, and Plaintiff's Equal Protection claims necessarily fail.

### 2.    *Damages*

As previously noted, in their Complaints, Plaintiffs seek a combined total of $12,000,000.00 in compensatory and punitive damages, and they ask that Defendants be required to pay for any mental health counseling that they may need as a result of Defendants' actions. (Docket no. 1 at 4; *Janis v. Liebeck*, No. 15-cv-14315, docket no. 1 at 3.)  In their Motions for Default Judgment, however, Plaintiffs seek $50,000 in damages for lost wages, unpaid bills, court costs, mental anguish, and legal fees.  (Docket no. 90 at 2; docket no. 91 at 2; docket no. 92 at 2.)  Because Plaintiffs set forth no basis in their Complaints for such an extraordinary award of $12,000,000.00 in damages, the Court will only consider the propriety of Plaintiffs' request for $50,000.

"Plaintiffs who allege employment discrimination . . . traditionally have been entitled to such remedies as injunctions, reinstatement, backpay, lost benefits, and attorney's fees under § 706(g) of the Civil Rights Act of 1964." *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 847-48 (2001) (citing 42 U.S.C. § 2000e-5(g)(1)).  "In the Civil Rights Act of 1991,

9

Congress expanded the remedies available to these plaintiffs by permitting, for the first time, the recovery of compensatory and punitive damages." *Id*. at 848 (citing 42 U.S.C. § 1981a(a)(1) ("[T]he complaining party may recover compensatory and punitive damages as allowed in subsection (b) of this section, in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964")).  Compensatory damages may be awarded under § 1981a for future pecuniary losses and for non-pecuniary losses, such as emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.  42 U.S.C.A. § 1981a(b)(3).

In her affidavit, Plaintiff Janis breaks down Plaintiffs' claim for $50,000 in damages as follows:

> With the agreement of pay being $250.00 per each 2 bedroom apartment and $300.00 per each 3 bedroom apartment with a guaranteed of 60 apartments to start, with more to follow upon taking the job, this was a loss of $40,000.00 wages, $3,000.00 unpaid bills, legal fees $3,000.00, mental anguish $4,000.00.  A total of $50,000 in damages.

(Docket no. 90 at 4; docket no. 91 at 4; docket no. 92 at 4.)  Plaintiff Janis's breakdown of Plaintiffs' damages comports with Plaintiffs' allegation that they were to be paid $50 per room, where the apartments consist of a living room, kitchen, bathroom, and a variable number of bedrooms.  (*See* docket no. 1 ¶¶ 2-3.)  But her calculations regarding Plaintiffs' amount of lost wages do not add up.  For example, if Plaintiffs were assigned to paint only 3-bedroom apartments, consisting of six rooms total, at a rate of $50 per room, they would be paid at a rate of $300.00 per apartment, as Plaintiff Janis correctly stated.  But the error lies where the $300.00 rate is multiplied by the guaranteed number of 60 apartments, as this calculation results in a total of $18,000 in lost wages or back pay per Plaintiff, or $36,000 for both Plaintiffs; it is unclear how Plaintiff Janis arrived at a total of $40,000 in lost wages.  Plaintiff's request for $3,000 in unpaid bills is also unclear and unsupported, as there is no explanation or supporting

10

documentation in this regard. Additionally, Plaintiff's request for $3,000 in legal fees is without merit, as Plaintiffs are proceeding *pro se* and *in forma pauperis*, and *pro se* litigants are not entitled to attorney's fees. *See Wright v. Cromwell,* 674 F.2d 521 (6th Cir. 1982). Finally, with regard to Plaintiffs' request for $4,000 in damages for mental anguish, the Court finds such a request to be reasonable in light of the circumstances of this case. Accordingly, Plaintiffs should be awarded $36,000 in back pay and $4,000 in compensatory damages for mental anguish for a total of $40,000 in damages.

### C.    Conclusion

For the above-stated reasons, the court should (1) **DENY** Plaintiffs' Motions for Default Judgment (docket nos. 80, 85, and 86) as moot; and (2) **GRANT IN PART** and **DENY IN PART** Plaintiffs' Motions for Default Judgment (docket nos. 90, 91, and 92) by entering a default judgment against Defendants in the amount of $40,000.

### III.    NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829

F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated:  January 29, 2018           s/ Mona K. Majzoub
                                   MONA K. MAJZOUB
                                   UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Plaintiff Mark Colston and Plaintiff Tammie Janis on this date.

Dated:  January 29, 2018           s/ Leanne Hosking
                                   Case Manager